Opinion issued June 4, 2009








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00992-CR

____________


CAROL WINSTON LEE, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause No. 1090548






MEMORANDUM OPINION

 A jury found appellant, Carol Winston Lee, guilty of the offense of felony
murder (1) and assessed his punishment at confinement for forty-three years and six
months. In seven points of error, appellant contends that the evidence is legally and
factually insufficient to support his conviction, the trial court erred in denying his
motion to suppress his videotaped statement, the trial court erred in denying his
motion to suppress inadmissible evidence in his videotaped statement, and the trial
court erred in not instructing the jury to disregard illegally obtained evidence. (2)

 We affirm.

Factual Background

 Houston Police Department ("HPD") Homicide Division Crime Scene Unit
Officer J. Duer testified that on October 20, 2006, he was dispatched to an apartment
complex to collect evidence at the scene of "a fatal shooting." Upon his arrival, Duer
found the body of the complainant, Gustavo Garcia, with "a small round hole in [his]
chest." Duer did not find a firearm at the scene of the crime, but he did find a .380
caliber bullet casing that had been ejected from a semi-automatic handgun. Wesley Freeman testified that on October 20, 2006, he had seen appellant
"exchanging words kind of loudly" with the complainant in a "loud and aggressive"
tone near Freeman's apartment. From his apartment, Freeman saw appellant "holding
a pistol a couple of feet away from the [complainant]." Freeman's nephew then
distracted him for a moment, and suddenly, he heard a gunshot. Freeman looked out
the window and saw appellant running away. When Freeman went downstairs to find
out what had happened, he saw a number of people gathered around the complainant,
who was on the ground bleeding "from his chest and his back." Some people called
for emergency assistance on their cellular telephones while others attempted to stop
the bleeding. After police officers arrived at the scene of the shooting, Freeman
talked to an investigator from the Harris County District Attorney's Office about what
he had seen.

 HPD Homicide Division Sergeant G. Gonzalez testified that on October 27,
2009, HPD Officer T. Hardin brought appellant to the HPD homicide division for
questioning. After reading appellant his legal rights, Gonzalez interviewed appellant
about his involvement in the shooting. 

 In the videotaped interview, appellant stated that he and three friends planned
to take five dollars from the complainant. Appellant agreed that the complainant
knew him and felt comfortable around him, so he "was supposed to like, like, let [the
complainant] focus on [him]" while one of his friends, Trey, "snatch[ed] the five
dollar bill" from the complainant. Appellant "knew [Trey] had a gun on him," but
Trey was not supposed to "pull out the gun." The plan was to "snatch the five dollar
bill" and run. However, as soon as he approached the complainant, Trey "pulled the
gun out" and "asked for the money." After the complainant refused, Trey shot the
complainant "one time." 

 Appellant conceded that he had been involved in the "robbery," but he denied
that he took any part in the "shooting." He told Gonzalez, "You can't do nothing to
me. That was not my gun. I didn't buy the gun, didn't even much touch the gun, so
it was a robbery then y'all could've hand cuffed me for a robbery."Sufficiency of the Evidence

 In his first point of error, appellant argues that the evidence is legally
insufficient to support his conviction for felony murder because the State failed to
prove that he "committed or attempted to commit an act clearly dangerous to human
life that caused the death of" the complainant while he committed or attempted "to
commit a felony other than manslaughter." In his second point of error, appellant
argues that the evidence is factually insufficient to support his conviction because his
conviction is against the great weight and preponderance of the evidence.

 We review the legal sufficiency of the evidence by considering all of the
evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)
(citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979)). 
In doing so, we give deference to the responsibility of the fact-finder to fairly resolve
conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the
facts. Id. However, our duty requires us to "ensure that the evidence presented
actually supports a conclusion that the defendant committed" the criminal offense of
which he is accused. Id. 

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We
note that a jury is in the best position to evaluate the credibility of witnesses, and we
afford due deference to the jury's determinations. Marshall v. State, 210 S.W.3d 618,
625 (Tex. Crim. App. 2006). Although we should always be mindful that a jury is in
the best position to decide the facts and that we should not order a new trial simply
because we disagree with the verdict, it is "the very nature of a factual-sufficiency
review that . . . authorizes an appellate court, albeit to a very limited degree, to act in
the capacity of a so-called 'thirteenth juror.'" Watson, 204 S.W.3d at 416-17. Thus,
when an appellate court is "able to say, with some objective basis in the record, that
the great weight and preponderance of the (albeit legally sufficient) evidence
contradicts the jury's verdict[,] . . . it is justified in exercising its appellate fact
jurisdiction to order a new trial." Id. at 417.

 An individual commits the offense of felony murder if he "commits or attempts
to commit a felony, other than manslaughter, and in the course of and in furtherance
of the commission or attempt . . . he commits or attempts to commit an act clearly
dangerous to human life that causes the death of an individual." Tex. Penal Code
Ann. § 19.03(b)(3) (Vernon 2003). A person commits the offense of robbery when,
"in the course of committing theft . . . and with intent to obtain or maintain control
of the property, he intentionally, knowingly, or recklessly causes bodily injury to
another." Id. § 29.02 (Vernon 2003); see id. § 31.03 (Vernon Supp. 2008) (defining
theft). Under the law of parties, a defendant may be convicted of the offense of
felony murder, even when the defendant does not intend to commit murder, if the
murder is committed in furtherance of the unlawful purpose and should have been
anticipated as a result of the carrying out of the conspiracy. See id. §§ 7.02(b)
(Vernon 2003), 19.03(b)(3).

 In support of his argument that the evidence is legally insufficient to support
his conviction, appellant asserts that "the record reflects that there was no robbery"
and that "at the time of the shooting he was not part of the plan" to rob the
complainant.

 Appellant argues that "there was no robbery" because police officers found
money in the complainant's pockets. Here, however, evidence of a completed theft
is not required to establish that appellant committed a robbery because the State
presented evidence that appellant had the specific intent to commit robbery and then
committed an act amounting to more than mere preparation for robbing the
complainant. Tex. Penal Code Ann. § 15.01(a) (Vernon 2003), § 19.03(b)(3)
(stating that to commit offense of felony murder, defendant must commit or attempt
"to commit a felony, other than manslaughter"); see Maldonado v. State, 998 S.W.2d
239, 243 (Tex. Crim. App. 1999). Even assuming that no completed theft occurred,
appellant admitted in his statement that he and his friends intended to rob the
complainant and, using a firearm, one of them demanded that the complainant give
them his money. Freeman's testimony indicated that appellant was the individual
who threatened the complainant with a firearm. Viewing the evidence in the light
most favorable to the verdict, we conclude that the evidence supports the jury's
implied finding that appellant committed the underlying felony offense of robbery. 
See Tex. Penal Code Ann. §§ 19.03(b)(3), 29.02.

 Appellant next asserts that he had not been "part of the plan" to rob the
complainant "at the time of the shooting." Viewing the evidence in the light most
favorable to the verdict, appellant threatened the complainant with a firearm and fired
the shot that killed the complainant. Freeman testified that he saw appellant "holding
a pistol a couple of feet away from the [complainant]" just thirty seconds before he
heard a gunshot. Although appellant told Officer Gonzalez that he had not touched
the gun, the jury could have disbelieved appellant and believed Freeman. 

 We conclude that the evidence supports the jury's implied finding that
appellant was involved in the robbery at the time of the shooting. Accordingly, we
hold that the evidence is legally sufficient to support appellant's conviction.

 In support of his argument that the evidence is factually insufficient to support
his conviction, appellant relies on two portions of Freeman's testimony and one
excerpt from his own statement. First, appellant asserts that, according to Freeman's
testimony, "when [a]ppellant ran away, [a]ppellant was not carrying a gun." Viewing
the evidence in a neutral light, Freeman testified that he had not "observe[d]
[appellant] to have a gun in his possession" when he ran away from the crime scene. 
This statement does not contradict Freeman's earlier testimony that he saw appellant
"holding a pistol a couple of feet away from the [complainant]" just thirty seconds
before he heard a gunshot. (3)

 Next, appellant, relying on his videotaped statement, asserts that "the plan got
'switched up,' meaning that at the scene there was a change of plans with the others
and . . . [that] he was not involved nor did he have a gun or shoot anyone." Even if
we were to rely solely on appellant's statement, he agreed that he intended to rob the
complainant with his friends, took part in the robbery by making the complainant feel
comfortable, and knew that his friend, Trey, "had a gun on him." In fact, in his
statement, appellant said, "If I had the gun I probably would've shot him because he
was taking too long" to pull out the money. At a minimum, under the law of parties,
appellant became criminally responsible for the offense of felony murder by
conspiring to rob the complainant knowing that his friend was carrying a firearm. See
Love v. State, 199 S.W.3d 447, 453 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd)
(citing Tex. Penal Code Ann. § 7.02(b)) (affirming conviction of defendant for
felony murder when he conspired to commit robbery knowing that co-conspirators
would be carrying firearms). Additionally, viewing the evidence in a neutral light,
the jury could have credited Freeman's testimony that appellant, not appellant's
friend, had been holding the firearm during the robbery.

 Finally, appellant argues that any conclusion by the jury that "[a]ppellant was
the shooter or involved in the robbery" is "speculation" because Freeman did not
actually "see [a]ppellant shoot the complainant." However, as explained above, even
if the jury believed that appellant did not shoot the complainant or touch the firearm,
they could have found him guilty of the offense of felony murder under the law of
parties. See Tex. Penal Code Ann. §§ 7.02(b), 19.03(b)(3); Love, 199 S.W.3d at
453. 

 We conclude that the evidence is not so obviously weak as to make the jury's
verdict clearly wrong and manifestly unjust, nor is the proof of guilt against the great
weight and preponderance of the evidence. Accordingly, we hold that the evidence
is factually sufficient to support appellant's conviction.

 We overrule appellant's first and second points of error.

Motion to Suppress

 In his third, fourth, and sixth points of error, appellant argues that the trial court
erred in denying his motion to suppress his videotaped statement because his initial
arrest was "unlawful," he was not properly read his legal rights, and he did not
knowingly waive his legal rights.

 Our standard for reviewing a trial court's ruling on a motion to suppress
evidence is bifurcated; we give almost total deference to a trial court's determination
of historical facts and review de novo the trial court's application of the law. 
Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). In reviewing a ruling
on a question of the application of law to facts, we review the evidence in the light
most favorable to the trial court's ruling. Montanez v. State, 195 S.W.3d 101, 106
(Tex. Crim. App. 2006). However, the trial court is the sole and exclusive trier of fact
and judge of the witnesses' credibility. Maxwell, 73 S.W.3d at 281. Accordingly, the
trial court may choose to believe or to disbelieve all or any part of the witnesses'
testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Unless the
trial court abuses its discretion by making a finding unsupported by the record, we
defer to the trial court's fact findings and will not disturb them on appeal. Flores v.
State, 177 S.W.3d 8, 13-14 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd). In
reviewing a trial court's ruling, we generally consider only evidence adduced at the
suppression hearing because the ruling was based on it rather than on evidence
introduced later. Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

Appellant's Arrest

 Appellant first asserts that his arrest "was not based on a valid actual offense
having been committed." At the suppression hearing, Officer Saucedo testified that
he had arrested appellant for walking in the street at a location where a sidewalk is
provided. See Tex. Transp. Code Ann. § 552.006(a) (Vernon 1999). However,
appellant testified that he had been walking on the sidewalk, not the street. Appellant
argues that "the pretext arrest . . . was unlawful" because "it was not based on a valid
actual offense having been committed."

 Unless the trial court abuses its discretion by making a finding unsupported by
the record, we defer to the trial court's fact findings and will not disturb them on
appeal. Flores, 177 S.W.3d at 13. Based on Officer Saucedo's testimony, the trial
court could have reasonably found that appellant had been walking in the street, not
on the sidewalk, when he was arrested. See Ross, 32 S.W.3d at 855. This conduct
is prohibited by law. See Tex. Transp. Code Ann. § 552.006(a) ("A pedestrian may
not walk along and on a roadway if an adjacent sidewalk is provided."). Accordingly,
the trial court could have concluded that appellant's arrest was lawful.

Reading of Appellant's Legal Rights

 Appellant next asserts that "there is no proof showing" that he was read his
legal rights "before he began his video statement," relying on Missouri v. Seibert, 542
U.S. 600, 124 S. Ct. 2601 (2004). In Seibert, police officers did not warn the
defendant of her legal rights until they had already obtained her statement. Id. at
604-06, 124 S. Ct. at 2606. After obtaining her statement, police officers read the
defendant her legal rights and then recorded her statement. Id. at 605-06, 124 S. Ct.
at 2606. The Supreme Court held that a post-warning statement is inadmissible when
police officers have already obtained the statement through pre-warning interrogation. 
Id. at 604, 124 S. Ct. at 2605. 

 Here, nothing in the record indicates that the police officers obtained, or
attempted to obtain, a pre-warning statement from appellant. Sergeant Gonzalez
testified that the first thing that he did when he entered the interrogation room with
appellant was to warn appellant about his legal rights. Thus, the trial court could
have reasonably found that appellant was properly warned about his legal rights
before Sergeant Gonzalez obtained his statement.

Appellant's Waiver of his Legal Rights

 Finally, appellant argues that he did not intelligently waive his legal rights
because Sergeant Gonzalez "did not specifically ask if [a]ppellant understood each
individual right" and, after reading appellant his legal rights, Gonzalez "did not
specifically ask him if he wanted to waive these rights and continue talking" about
the incident.

 An oral statement is only admissible if "prior to the statement but during the
recording the accused is" informed of his legal rights and "the accused knowingly,
intelligently, and voluntarily waives" his legal rights. Tex. Code Crim. Proc. Ann.
art. 38.22 §§ 2(a), 3(a) (Vernon 2005). In evaluating whether an oral statement is
admissible, we look at the totality of the circumstances. See Turner v. State, 252
S.W.3d 571, 583 (Tex. App.--Houston [14th Dist.] 2008, pet. ref'd). 

 Regarding appellant's assertion that Sergeant Gonzalez "did not specifically
ask if [he] understood each individual right," at the beginning of appellant's
videotaped statement, Gonzalez told appellant:

 [Gonzalez:] Okay, we're investigating the incident that happened
at 7520 Cook last Friday which was, October 20th. 
I'm going to read you your rights Carol as I
explained to you earlier when you first came in. 
After I read each one I want you to tell me out loud
that you understand it okay? 

 Before reading appellant his legal rights, Gonzalez explained that after he read
appellant each legal right, appellant should tell him if he understood that right. After
Gonzalez read each right, appellant responded affirmatively. Additionally, at the
suppression hearing, appellant agreed that Gonzalez read him his legal rights and that
he understood them.

 Regarding appellant's waiver of his legal rights, it is undisputed that appellant
did not explicitly waive his rights. Nevertheless, as appellant stated at the
suppression hearing, he understood his legal rights "and still wanted to talk to" the
police officers. By indicating that he understood his legal rights and then proceeding
to answer Gonzalez's questions, he implicitly waived his rights. See Turner, 252
S.W.3d at 583 (citing Barefield v. State, 784 S.W.2d 38, 40-41 (Tex. Crim. App.
1989), overruled on other grounds by Zimmerman v. State, 860 S.W.2d 89 (Tex.
Crim. App. 1993)) (holding that defendant validly waived his legal rights when he
understood his rights and proceeded to answer questions). Such an implicit waiver
is valid under article 38.22 and under the United States and Texas Constitutions. Id. 
Thus, the trial court could have reasonably found that appellant had validly waived
his legal rights prior to giving his videotaped statement.

 We hold that the trial court did not err in denying appellant's motion to
suppress his videotaped statement.

 We overrule appellant's third, fourth, and sixth points of error.

Extraneous Offenses in Appellant's Statement

 In his fifth point of error, appellant argues that the trial court erred in denying
his motion to suppress a portion of his videotaped statement that contained references
to inadmissible extraneous offenses.

 Appellant specifically complains about the portion of his statement in which
the following exchange occurred:

 [Gonzalez:] How many times did you sell dope to this dude
before, this guy that was . . . ?

 

 [Appellant:] Not too much, 'cause he always come with short
change like two dollars.

 

 . . . .

 

 [Gonzalez:] So he felt comfortable, the reason he walked up to
y'all is because he felt comfortable with you right? 
Because he's done deals with you before so he felt
comfortable.


 [Appellant:] But he went way back there, man, he passed me up!

Appellant argues that the trial court erred in admitting this portion of his statement
because "[e]vidence of other crimes, wrongs or acts is not admissible to prove the
character of a person in order to show action in conformity therewith." Tex. R. Evid.
404(b) (emphasis added). 

 Here, the State did not offer this evidence to show that appellant acted in
conformity with his past crimes of selling narcotics to the complainant. Rather, the
State offered this evidence to show that appellant chose to rob the complainant
because the complainant was comfortable around appellant and carried cash. This
evidence served to establish appellant's relationship with the complainant. See
Hernandez v. State, 171 S.W.3d 347, 359-61 (Tex. App.--Houston [14th Dist.] 2005,
pet. ref'd). 

 Accordingly, we hold that the trial court did not err in denying appellant's
motion to suppress the abovementioned portion of his statement and admitting it as
part of State's Exhibit 30-A over appellant's objection.

 We overrule appellant's fifth point of error.

Requested Jury Charge

 In his seventh point of error, appellant argues that the trial court erred in
denying his request for an article 38.23 jury instruction because "there was an issue
as to the voluntariness of appellant's confession." See Tex. Code Crim. Proc. Ann.
art. 38.23(a) (Vernon 2005) ("In any case where the legal evidence raises an issue
hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt,
that the evidence was obtained in violation of the provisions of this Article, then and
in such event, the jury shall disregard any such evidence so obtained."). 

 Article 38.23 only requires a jury instruction when the evidence to be heard by
the jury raises an issue of fact. See Oursbourn v. State, 259 S.W.3d 159, 177 (Tex.
Crim. App. 2008). Here, as noted above, the facts are undisputed: appellant
understood his rights and proceeded to answer Gonzalez's questions. In doing so,
appellant validly waived his rights. See Turner, 252 S.W.3d at 583. There is no issue
of fact which would have required a jury instruction. See Oursbourn, 259 S.W.3d
at 177. Accordingly, we hold that the trial court did not err in denying appellant's
request that it instruct the jury to disregard illegally obtained evidence.

 We overrule appellant's seventh point of error.



Conclusion

 We affirm the judgment of the trial court. 


 



 Terry Jennings

 Justice


Panel consists of Justices Jennings, Keyes, and Higley.


Do not publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Penal Code Ann. §§ 19.02(b)(3), 29.02 (Vernon 2003).
2. See Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005).
3. As the State asserts in its briefing, "[A]ppellant may have given the gun to someone
else after shooting and killing the complainant, or he may have simply placed the gun
in his pocket as he ran from the scene of the offense."